IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS AMADIO, et al.          :          CIVIL ACTION
                               :
          v.                   :
                               :
JOHN GLENN, et al.             :          NO. 09-4937

MEMORANDUM

Dalzell, J.                                    February 1, 2011

        This case arises from an auto accident that occurred on

November 16, 2007.  Plaintiff Thomas Amadio was driving his car

along Packer Avenue near its intersection with 16th Street in

Philadelphia when another vehicle suddenly struck his car.

Defendant Haines Greenhouse, Inc. owned the car and defendant

John Glenn drove it.

        The parties have already completed discovery, and

plaintiffs have filed a <u>Daubert</u> motion to preclude the opinion

testimony of Drs. Kohler and Moberg ("the doctors") related to

the results of the Minnesota Multiphasic Personality Inventory -2

("MMPI-2") Test and to preclude any expert testimony related to

credibility.

        Defendants for their part have filed two <u>Daubert</u>

motions, one to preclude any and all evidence, whether

testimonial or otherwise, regarding plaintiffs' expert, Kenneth

Creech, a professional engineer, and the other to preclude any

and all evidence, whether testimonial or otherwise, of Dr. Robert

Cancro's opinion that plaintiff suffered a traumatic brain injury. As we have the parties' briefs and copious supporting documentation,[1] we now address the motions.

## I. Factual Background

According to plaintiffs' motion to preclude expert testimony, in addition to the November 16, 2007 accident, Amadio was in a car accident in 2001 that resulted in multiple injuries, including brain damage. Amadio now claims that the brain damage suffered from his prior injury worsened as a result of the car accident at issue here.

On March 9, 2010, at the request of plaintiffs' counsel, Dr. Robert Cancro examined Mr. Amadio. Dr. Cancro provided two expert reports. On April 9, 2010, Kenneth Creech, an engineer, provided an expert report after investigating the nature and cause of the collision between Amadio's 2005 Chrysler passenger car as it traveled west and Haines Greenhouse's 1995 Chevrolet Box Van as it exited a parking space near the intersection of Packer Avenue and 16th Street in Philadelphia. Defendants had Christian Kohler, M.D., and Paul J. Moberg, Ph.D.

_____

[1] In our October 1, 2010 Order, at the joint request of the parties, we cancelled the scheduled Daubert hearing. The question of whether to hold such a hearing "rests in the sound discretion of the district court." Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 418 (3d Cir. 1999).

examine Amadio on April 19 and 22, 2010 to evaluate his present injuries, including his brain damage. During the course of their evaluation, Drs. Kohler and Moberg administered the MMPI-2 test to him.

Christian G. Kohler, M.D., is an Associate Professor of Psychiatry and Neurology at the Hospital of the University of Pennsylvania, Departments of Psychiatry and Neurology in the School of Medicine. He has been on the faculty of the University of Pennsylvania since 1997. He holds an M.D. from Innsbruck University, Austria. He is a Neuropsychiatrist in the Brain Behavior Clinic in the Department of Psychiatry at the University of Pennsylvania. He is a member of the American Neuropsychiatric Association and a member of the VAMC Mental Health and Behavioral Sciences Merit Review.

Paul Joseph Moberg, Ph.D., is an Associate Professor in the Department of Neurology in the University of Pennsylvania School of Medicine. He holds a B.A. from Augsburg College, an M.A. from Loyola College of Maryland, and a Ph.D. from the University of Health Sciences at The Chicago Medical School. He is a member of the International Neuropsychological Society, the American Psychological Association, Division 40, Clinical Neuropsychology, the American Board of Clinical Neuropsychology,

the American Academy of Clinical Neuropsychology, the National

Academy of Neuropsychology, the Association of Chemoreception

Sciences, the Society of Behavioral and Cognitive Neurology, and

the Schizophrenia International Research Society.

Robert Cancro, M.D., is the Lucius N. Littauer

Professor of Psychiatry at the New York University Langone

Medical Center.  He holds a B.S. from Fordham College and an M.D.

and Med.D.Sc. from the State University of New York.  He is

President of the International Committee Against Mental Illness

and the Director of the Mental Illness Prevention Center.

Kenneth Creech is a licensed professional engineer.  He

holds an Associates of Technology in Electronics and a B.S. in

Engineering from Temple University, as well as a B.S. in

Industrial Management from LaSalle University.  He is a member of

the Building Officials and Code Administrators International, the

National Fire Protection Association, and the American Society of

Heating, Refrigeration, and Air-Conditioning Engineers.

## II.  Legal Standard

The Federal Rules of Evidence provide that, where

"scientific, technical, or other specialized knowledge will

assist the trier of fact to understand the evidence or to

determine a fact in issue," an expert who is qualified "by

4

knowledge, skill, experience, training, or education" may offer

testimony in the form of an opinion. Fed. R. Evid. 702. Such

evidence is admissible only where "(1) the testimony is based

upon sufficient facts or data, (2) the testimony is the product

of reliable principles and methods, and (3) the witness has

applied the principles and methods reliably to the facts of the

case." Id.

Rule 702 incorporates the Supreme Court's holding in

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), in the

form of what our Court of Appeals has called "a trilogy of

restrictions on expert testimony: qualification, reliability and

fit." Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). In

evaluating opinion testimony on motions such as these, "the

district court acts as a gatekeeper, preventing opinion testimony

that does not meet the requirements of qualification, reliability

and fit from reaching the jury." Id. As a general rule, the

party that wishes to introduce the expert testimony bears the

burden of demonstrating that the testimony is admissible by a

preponderance of the evidence. Daubert, 509 U.S. at 592-93.

Because we address these motions in our role as

gatekeeper rather than as finder of fact, our "focus. . . must be

solely on principles and methodology, not on the conclusions that

they generate." <u>Daubert</u>, 509 U.S. at 595.  Nevertheless, in

order to admit the evidence we must be satisfied that the

proffered testimony represents what Rule 702 refers to as

"scientific. . . knowledge."  As <u>Daubert</u> explains: "The adjective

'scientific' implies a grounding in the methods and procedures of

science.  Similarly, the word 'knowledge' connotes more than

subjective belief or unsupported speculation." <u>Id.</u> at 590.  In

other words, in order for scientific testimony to be sufficiently

reliable it "must be derived by the scientific method" and "must

be supported by appropriate validation -- <u>i.e.</u>, 'good grounds,'

based on what is known." <u>Id.</u>  The scientific method requires

"the generation of testable hypotheses that are then subjected to

the real world crucible of experimentation,

falsification/validation, and replication." <u>Caraker v. Sandoz</u>

<u>Pharm. Corp.</u>, 188 F. Supp. 2d 1026, 1030 (S.D. Ill. 2001).

        "The reliability requirement ... should not be applied

too strictly." <u>Holbrook v. Lykes Bros. S.S. Co.</u>, 80 F.3d 777,

784 (3d Cir. 1996).  So long as "the expert has 'good grounds'

for the testimony, the scientific evidence is deemed sufficiently

reliable." <u>Id.</u>  The need for good grounds, however, "means that

<u>any</u> step that renders the analysis unreliable under the <u>Daubert</u>

<u>factors renders the expert's testimony inadmissible.  This is</u>

true whether the step completely changes a reliable methodology

or merely misapplies that methodology."  In re Paoli R.R. Yard

PCB Litig., 35 F.3d 717, 745 (3d Cir. 1994) ("Paoli II")

(emphasis in original).  Although "[t]he Rules of Evidence embody

a strong preference for admitting any evidence that may assist

the trier of fact," Pineda v. Ford Motor Co., 520 F.3d 237, 243

(3d Cir. 2008), "the trial judge must have considerable leeway in

deciding in a particular case how to go about determining whether

particular expert testimony is reliable." Kumho Tire Co. v.

Carmichael, 526 U.S. 137, 152 (1999).

We must also consider "whether expert testimony

proffered in the case is sufficiently tied to the facts of the

case that it will aid the jury in resolving a factual dispute."

Daubert, 509 U.S. at 591 (quoting United States v. Downing, 753

F.2d 1224, 1242 (3d Cir. 1985)).  "Rule 702's 'helpfulness'

standard requires a valid scientific connection to the pertinent

inquiry as a precondition to admissibility."  Id. at 591-92.

This helpfulness requirement -- which our Court of Appeals calls

"fit" -- is, in the end, "the ultimate touchstone of

admissibility."  Holbrook, 80 F.3d at 784.

As for Federal Rule of Evidence 403, it allows a

district court to exclude relevant evidence "if its probative

value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "Federal judges must. . . exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that <u>it speaks clearly and directly to an issue in dispute</u> in the case, and that <u>it will not mislead the jury</u>." <u>U.S. v. Ford</u>, 481 F.3d 215, 220 n.6 (3d Cir. 2007) (quoting <u>Daubert v. Merrell Dow Pharm, Inc.</u>, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995)) (emphasis in original). Expert testimony that is admissible pursuant to Rule 702 and <u>Daubert</u> remains subject to balancing analysis under Rule 403. <u>See Paoli II</u>, 35 F.3d at 746-47.

## III.  Analysis

### A.    Plaintiffs' Motion to Preclude the Testimony of Drs. Kohler and <u>Moberg as it Relates to the MMPI-2 Test</u>

Plaintiffs move to preclude the opinion testimony of Drs. Kohler and Moberg relating to the results of the MMPI-2 test and to preclude any expert testimony related to Amadio's credibility.  Plaintiffs (understandably) do not contest the doctors' qualifications.  Instead, they challenge the reliability

of their methodology and the fit of their opinions to the
evidence.

This Court "acts as a gatekeeper to ensure that any and
all expert testimony or evidence is not only relevant, but also
reliable." <u>Pineda</u>, 520 F.3d at 243 (internal quotation marks
omitted). Pursuant to Rule 702's second requirement, "an expert's
testimony is admissible so long as the process or technique the
expert used in formulating the opinion is reliable." <u>Paoli II</u>, 35
F.3d at 742. Our Court of Appeals, however, has "cautioned that
the evidentiary requirement of reliability is lower than the
merits standard of correctness," <u>Pineda</u>, 520 F.3d at 247
(internal quotation marks and alterations omitted), because
"[a]dmissibility decisions focus on the expert's methods and
reasoning," while "credibility decisions arise after
admissibility has been determined." <u>Kannankeril v. Terminix</u>
<u>Int'l, Inc.</u>, 128 F.3d 802, 806 (3d Cir. 1997).

Several non-exhaustive factors guide our inquiry into
the reliability of expert testimony:

> (1) whether a method consists of a
> testable hypothesis; (2) whether the
> method has been subject to peer review;
> (3) the known or potential rate of
> error; (4) the existence and maintenance
> of standards controlling the technique's
> operation; (5) whether the method is
> generally accepted; (6) the relationship

9

of the technique to methods which have
been established to be reliable; (7) the
qualifications of the expert witness
testifying based on the methodology; and
(8) the non-judicial uses to which the
method has been put.

Pineda, 520 F.3d at 247-48. These factors are "neither exhaustive

nor applicable in every case," Kannankeril, 128 F.3d at 806-07,

because the inquiry into the reliability of expert testimony is

meant to be "flexible," Daubert, 509 U.S. at 594.

In order to be admissible, expert conclusions must also

be helpful to the finder of fact.  Holbrook, 80 F.3d at 784.  As

noted, our Court of Appeals has described this as "fit," and it

deals with both the relevance of the conclusion to the scientific

questions at issue and any analytical gaps in the experts'

conclusions that may render them misleading when applied to the

evidence in the case.  General Elec. Co. v. Joiner, 522 U.S. 136,

146 (1997).

Plaintiffs argue that based on the results of the MMPI-

2 test, Drs. Kohler and Moberg opined that Mr. Amadio's answers

demonstrated "over-reporting and exaggeration of

psychopathology," "extreme levels of exaggeration," "responding

bias," and that "Mr. Amadio skewed his responses toward greater

psychopathology."  Plaintiffs' Memorandum of Law in Support of

its Daubert Motion to Preclude Opinion Testimony of Drs. Kohler

10

and Moberg Related to the Results of the MMPI-2 Test and to
preclude Any Expert Testimony Related to Credibility ("Pl. Mot.")
at 1-2.  Plaintiffs contend that their evaluation of Mr. Amadio
using the MMPI-2 test was flawed because (1) it cannot be validly
used or interpreted in patients who are known to be brain
damaged, and (2) one of the sub-scales of the test designed to
detect "malingering" -- known as the "Fake Bad Scale" -- is
scientifically invalid as it overestimates malingering.  Based on
these reasons, plaintiffs argue that evidence related to the
MMPI-2 test should be precluded under Rule 702 and <u>Daubert</u>
because the doctors' use of this test is not reliable and does
not fit the evidence.  <u>Id.</u> at 5.  Plaintiffs claim that the
relevant scientific literature makes it clear that the standard
use of the MMPI-2 with patients with brain injuries is
"psychometrically indefensible."  <u>Id.</u> (citing Groth-Marnat, Gary,
Neuropsychological Assessment in Clinical Practice: A Guide to
Test Interpretation and Integration (John Wiley & Sons, Inc.
2000) at 464-65).

     Defendants contend that "plaintiffs are unsatisfied
with the MMPI-2 test results," and claim that attacking the tests
used in a medical examination through the vehicle of a motion <u>in</u>
<u>limine</u> is improper.  They argue that the test results should be

admitted and then subjected to vigorous cross-examination.
Memorandum of Law in Support of Defendants' Response to
Plaintiffs' Motion in Limine to Preclude the Opinion Testimony of
Drs. Kohler and Moberg Related to the Results of the MMPI-2 Test
("Def. Resp.") at unnumbered page 5.

         As a general matter, we agree that if a plaintiff wants
to challenge the interpretation of certain results they should
not be precluded, but should be subjected to cross-examination.
Shea v. Long Island R.R., No. 05-9768, 2009 WL 1424115, at *5
(S.D.N.Y. May 21, 2009) ("If certain MMPI-2 scales may be used to
challenge [the doctor's] opinions, or there are weaknesses in his
reasons for discounting alternative explanations for
[plaintiff's] elevated scores, the remedy is not preclusion but
cross-examination and presentation of contrary evidence.").  But
here defendants fail to address plaintiffs' point that the MMPI-2
test should not be administered to people with known brain
damage.  Defendants do not dispute that Mr. Amadio suffered brain
damage from his earlier accident.  Def. Resp., Ex. A at 9
("Thomas Amadio . . . suffered a [sic] multiple severe injuries
as the result of a motor vehicle accident in November 2001,
including severe facial injuries and significant traumatic brain
injury, requiring hospitalization.").  The doctors also

acknowledge that Mr. Amadio only experienced "partial recovery" from his 2001 injuries.  Id.

Defendants do not respond to this aspect of plaintiffs' argument at all.  Instead, they recast the substance of plaintiffs' motion as being that "the use of the MMPI-2 test is scientifically unreliable."  Id. at unnumbered page 5. Defendants cite a single case, Babish v. Sedgwick Claim Mgmt. Servs., Inc., No. 07-1539, 2009 WL 563951 (W.D. Pa. Mar. 2, 2009), to argue that the use of the MMPI-2 test is scientifically sound.  But that case does not address the issue of whether the MMPI-2 test is proper on one with known brain damage.  It is certainly true that "the MMPI [may be] used to screen for personality and psychosocial disorders[, and] is also frequently administered as part of a neuropsychological test battery to evaluate cognitive functioning," id. at unnumbered page 6.  But defendants have failed to show whether (a) their opinion, insofar as it is based on the MMPI-2 test, consists of a testable hypothesis with regard to brain damaged victims, (b) the MMPI-2 has been subject to peer review on the subject of brain damaged people, and (c) there exist standards controlling the technique's operation for brain damaged individuals, or most particularly and

importantly, (d) the method is generally accepted for use on those who are brain damaged.

Thus, we will preclude the expert opinion testimony of Drs. Kohler and Moberg relating to the results of the MMPI-2 test and its sub-scales (including the "Fake Bad Scale") pursuant to Fed. R. Evid. 702. Because we will preclude testimony relating to the MMPI-2 test results, we need not address plaintiffs' contention regarding the "Fake Bad Scale," which is a sub-scale of the MMPI-2 test.

Plaintiffs argue that where expert testimony as to credibility encroaches on the jury's exclusive function to make such determinations, that testimony does not "assist the trier of fact" as Rule 702 requires. Pl. Mot. at 7. Plaintiffs contend that defendants have improperly proffered medical experts to opine that Mr. Amadio is exaggerating his complaints and is not credible and have based these opinions on defendants' improper and invalid use of the MMPI-2 test. Plaintiffs reason that the doctors' view that Mr. Amadio is not credible should be precluded under Fed. R. Evid. 403 because this type of opinion creates a serious danger of confusing or misleading the jury. Id. at 2. Plaintiffs contend that we should preclude the doctors' conclusions that Mr. Amadio's "self-report of emotional

disruption and somatic complaints is not considered accurate and

Mr. Amadio is likely functioning better than he is presenting"

because its probative value is substantially outweighed by the

danger of unfair prejudice and would impermissibly usurp the

jury's function as the finder of fact with regard to credibility.

Id. at 10.  Defendants respond that the doctors never intended to

testify outside of Mr. Amadio's objective test results or outside

their opinions based upon those results.  Def. Resp. at

unnumbered page 8.

    Because we will preclude Drs. Kohler and Moberg's

testimony with regard to the MMPI-2 test, we need not address

plaintiffs' argument that the doctors' testimony with regard to

those results may have improperly impeached Mr. Amadio's

credibility.  To the extent that the doctors may have intended to

opine on Mr. Amadio's credibility with regard to other test

results, they are precluded from doing so.  Coney v. NPR, Inc.,

312 Fed. App'x 469, 474 (3d Cir. 2009) ("A doctor. . . cannot

pass judgment on the alleged victim's truthfulness in the guise

of a medical opinion, because it is the jury's function to decide

credibility," quoting United States v. Whitted, 11 F.3d 782, 785-

86 (8th Cir. 1993)).

## B.    Defendants' Motion to Preclude
the Testimony of Dr. Robert Cancro

Defendants argue that Dr. Cancro is not qualified to offer his opinion.  Defendants further argue that Dr. Cancro's opinion, even if he were qualified to give it, is not reliable.

Qualification "requires that the witness possess specialized expertise." Pineda, 520 F.3d at 244 (internal quotation marks omitted). Our Court of Appeals has "interpreted [this] requirement liberally" so that "a broad range of knowledge, skills, and training" suffice to qualify an expert. Id. (internal quotation marks omitted). An "expert's testimony is not limited to the area in which he or she ... specialize[s]," but "the party offering the expert must demonstrate that the expert has the necessary expertise." Ferris v. Pa. Fed'n Bd. of Maint. of Way Employees, 153 F. Supp. 2d 736, 743 (E.D. Pa. 2001).  If the expert testimony falls outside a witness's expertise, we will exclude it. Id.  But we may not exclude proposed expert testimony simply because we do not deem the expert the best qualified or because the expert is without the appropriate specialization.  Holbrook, 80 F.3d at 782. The "best" qualified is a matter of weight upon which reasonable jurors may disagree.  Id.  A certain degree or background is not required under the flexibility of Rule 702. See id.

Defendants contend that Dr. Cancro does not possess the requisite requirements to qualify as an expert with respect to determining whether Mr. Amadio has suffered a "traumatic brain injury." Defendants John Glenn and Haines Greenhouse, Inc.'s Brief in Support of its Motion in Limine to Preclude Any and All Evidence, Whether Testimonial or Otherwise, of Dr. Robert Cancro's Opinion that Plaintiff Suffered a Traumatic Brain Injury Per Fed. R. Evid. 702 and 403 ("Def. Cancro Mot.") at unnumbered page 2. Defendants also argue that Dr. Cancro has failed to specify the process, method or technique he used in formulating his opinion that Mr. Amadio suffered a traumatic brain injury, and therefore his opinion should be excluded because it is speculative and thus unreliable. Id. at unnumbered page 4. Defendants claim that allowing plaintiffs to offer Dr. Cancro's opinion regarding whether Mr. Amadio suffered a traumatic brain injury would allow the jury to take his unfounded opinions as evidence, and thus would unfairly prejudice defendants. Id. at unnumbered page 5.

As his curriculum vitae shows, Dr. Cancro is an internationally renowned psychiatrist. There is no question that Dr. Cancro has sufficient formal qualifications. Apart from his work as the Lucius N. Littauer Professor of Psychiatry at NYU

17

Medical Center and as the Director of the Mental Illness
Prevention Center, Dr. Cancro has also been on the editorial
board of about twenty-five separate publications, including many
prominent peer-reviewed journals.  Def. Cancro Mot., Ex. D.  Dr.
Cancro was previously the consulting psychiatrist for the New
York Yankees and a member of the Research Advisory Committee for
the United States Secret Service.  He is the Chairman on the
Section on Psychosocial Rehabilitation for the World Psychiatric
Association, Chairman of the Scientific Committee of the World
Association of Psychosocial Rehabilitation and was a Member of
the Expert Advisory Panel on Mental Health for the World Health
Organization until 2003.  Id.  Thus, we find Dr. Cancro amply
qualified to opine as an expert in this case as to whether Mr.
Amadio has experienced a traumatic brain injury.  And, even if it
were necessary for Dr. Cancro to have specialized qualifications,
we note from his c.v. that he also has expertise in neurology and
brain injury as well as general expertise as a licensed
physician.  Id.

     With regard to whether Dr. Cancro's methodology is
sound, "a judge should find an expert opinion reliable under Rule
702 if it is based on 'good grounds,' i.e., if it is based on the
methods and procedures of science."  Paoli II, 35 F.3d at 744.

Defendants argue that Dr. Cancro has not specified his method, process or technique, but Dr. Cancro states in his reports that he reviewed the neuropsychological report Dr. Goldberg wrote in March of 2010, the neuropsychological evaluation that was performed in May of 2002, the extensive medical records that plaintiffs' counsel submitted to him, and examined Mr. Amadio himself.  Def. Cancro Mot., Ex. B, Ex. C.  Other courts have found this methodology to be reliable.  For example, Judge Pratter, in <u>Qeisi v. Patel</u>, No. 02-8211, 2007 WL 527445 (E.D. Pa. Feb. 9, 2007), found that "[a]n expert may be found reliable based on 'personal knowledge or experience'. . . .  Pointing to the symptoms a patient exhibits. . . and making an evaluation or diagnosis based on those symptoms is precisely the type of 'opinion' that doctors make every day in practice." <u>Id.</u> at *7 (internal citations omitted).  And "it is perfectly acceptable, in arriving at a diagnosis, for a physician to rely on examinations and tests performed by other medical practitioners." <u>Kannankeril</u>, 128 F.3d at 807.  Thus, we find Dr. Cancro qualified and his opinion reliable, and will deny defendants' motion to preclude Dr. Cancro's opinion that plaintiff suffered a traumatic brain injury.

### C.    Defendants' Motion to Preclude
###        the Testimony of Kenneth Creech

Defendants move to preclude the testimony of Kenneth
Creech, P.E., arguing that he does not have the requisite
requirements to qualify as an expert with regard to his opinions
about Mr. Amadio's injuries, Mr. Glenn's failure to see Mr.
Amadio's car, and Mr. Glenn's negligence in operating the box
van.  Memorandum of Law in Support of Defendants John Glenn and
Haines Greenhouse, Inc.'s Motion in Limine to Preclude Any and
All Evidence, Whether Testimonial or Otherwise, Regarding
Plaintiff's [sic] Expert Kenneth Creech ("Def. Creech Mot.") at
unnumbered page 2.

Plaintiffs submitted the expert report of Mr. Creech, a
licensed professional engineer with expertise in accident
reconstruction, which discusses the mechanism of the accident and
the forces involved.  But Mr. Creech also opined that after the
vehicles collided, "[t]he inertia force[d] [Mr. Amadio's] head
forward[,] slamming [it] into the steering wheel, next [his] head
bounce[d] backward from the reaction with the steering wheel
causing trauma to the head, neck and shoulders." Id., Ex. B at
3.  In addition, Mr. Creech opined that "[t]he driver of the box
van failed to observe the oncoming vehicle and collided with the
Chrysler 300 while entering into the westbound traffic on Packer

Avenue.  The careless operation of the truck caused serious injury to the driver." Id. at 5.  Defendants argue that Mr. Creech's assertions are without foundation and constitute speculation on his part.  Id. at unnumbered page 5.

Plaintiffs respond that Mr. Creech is a licensed professional engineer with specialized knowledge, as stated on his c.v., in several areas, including automobile accident reconstruction.  He is licensed as an engineer in six states, including Pennsylvania.  Id., Ex. B at unnumbered page 6.  Mr. Creech has over thirty years of experience, as well as taking continuing education courses in accident reconstruction.  Mr. Creech is certainly qualified as an accident reconstruction expert.  And with regard to the reliability of his methods, we find that he adequately described his methodology.  We need not, as plaintiffs invite us to do, take judicial notice of the wikipedia.org pages describing vector analysis or Newton's second law of motion.

But we must take issue with Mr. Creech's report with regard to the "fit" of his opinion to the facts of this case.  As we noted above, there must be a "valid scientific connection to the pertinent inquiry as a precondition to admissibility."  Daubert, 509 U.S. at 592.  Opining that Mr. Amadio sustained

"trauma to the head, neck, and shoulders" does not fit the pertinent inquiry Mr. Creech's report is meant to address. Mr. Creech is not a medical doctor, and his opinion with regard to "trauma" -- which is, after all, a medical diagnosis -- is not something about which he is qualified to opine. His opinion in this regard will not help the trier of fact, and it may unfairly prejudice defendants.

Plaintiffs argue that Mr. Creech's opinion that Mr. Glenn failed to see Amadio's car is consistent with Mr. Glenn's admission in his deposition that he did not see Mr. Amadio's car. Pl. Creech Resp. At 9. Nevertheless, opining about Mr. Glenn's failure to see Mr. Amadio's car is not something that naturally follows from analyzing the physical forces at play between two vehicles as they collide.

Finally, plaintiffs do not respond to defendants' argument about Mr. Creech's opinion that "[t]he careless operation of the truck caused serious injury to the driver" is outside the scope of his expertise. That opinion is a legal conclusion unrelated to the force of the vehicles impacting one another, and is not proper in this context. Thus, we find that although Mr. Creech is qualified as an accident reconstruction expert, and his methodology with regard to accident

reconstruction is reliable, his testimony does not fit the facts of the case with regard to the opinions cited above that are outside the scope of his expertise.  Thus, we will grant defendants' motion to preclude the expert testimony of Kenneth Creech.

BY THE COURT:


__\s\Stewart Dalzell